**OHIO PUBLIC SERVICE CO v PRIEST, et**

Ohio Appeals, 5th Dist, Ashland Co
Decided May 7, 1930

C. H. Henkel, Mansfield, and M. V. Semple, Ashland, for Public Service Co.

Dover & Dover, Ashland, for Priest, et.

MIDDLETON, PJ, MAUCK & BLOSSER, JJ (4th Dist) sitting.

**620**

MAUCK, J.

The first question raised is that the trial court erred in not sustaining the plaintiff's challenge of certain jurors who were called to the box. Mr. P. C. Fritzinger is the husband of one of the owners. He conducts an insurance agency in the city of Ashland and a number of the prospective jurors were found to have policies of insurance issued by his office, and this it was claimed constituted sufficient ground for challenge for cause. Section 11051 GC, providing specially for jurors in appropriation cases, requires the probate judge to personally inquire of each juror offered

"whether he is interested in any way in any of the property, rights or interests sought to be appropriated, or in the corporation which filed the petition either as owner, stockholder, agent, attorney or otherwise."

It is further provided that if such person answers in the affirmative or it be otherwise shown to the judge that the proposed juror is so interested he shall be excused from service. It is quite clear that the fact that a proposed juror has taken out insurance with the husband of one of the owners of real estate does not make him a person interested in any way in that real estate. If the competency of the jurors be tested by Section 11437 GC, fixing the grounds for challenge generally in civil cases, there is likewise no hint in the statute indicating that the ground suggested constitutes a sufficient reason for excusing the juror. There is nothing in the record suggesting that the purely business relations between the jurors and Mr. Fritzinger were such as to warrant the challenge and the trial court was right in overruling the same.

Questions of evidence arose during the progress of the trial in regard to the way in which the value of the appropriated property should be determined, the plaintiff insisting that as the land in question was nothing but a farm its value should be based soley upon its value as a farm, that is, its value for agricultural purposes, and now argues that to allow any other factor to be introduced in the case is to permit the value to be predicated upon mere speculation. We, of course, agree that the jury was bound to find the value of the property as it was at the time the appropriation was made and not what it might be at some time in the future when under favorable circumstances its value might be greatly enhanced. One of the things, however, that gives value to property, and especially suburban property, is that the probability of its future use for some other purpose gives it a present market value greater than its present use would indicate. In other words, the immediate use to which the property might be put may be purely agricultural but its market value may be much more than its agricultural earnings would justify because a prospective purchaser finds it to be worth more on account of the probability of its use for other purposes. We find no serious error in the admission of evidence.

Plaintiff in error complains of the failure of the trial court to give its special request number three as an instruction to the jury before argument. This instruction is as follows:

"I further charge you, ladies and gentlemen of the jury, that if you find that any witness testifying in this case as to the value of the defendants' lands at the present time and value thereof after the transmission line is completed has taken into consideration, in arriving at such value so testified to, in whole or in part, any remote, speculative or future use or purpose to which such lands might be put, and there being no demand, public or private, at this time for any such use or purpose, or has considered any element of fear or danger to the person or property of the defendants or their successors in title, after said transmission line is completed, then you shall disregard and not consider any such witness' testimony as to values for the reason that the law does not permit you as jurors to speculate and guess as to values."

The meaning of the first proposition in this proposed instruction is not clear. Its obscurity lies in the phrase "and there being no demand, public or private, at this time for any such use or purpose". This would appear to be equivalent to saying that there is no demand at this time for any such use or purpose. If the instruction had been conditioned on the jury finding that there is no demand, public or private, for any such use or purpose that at this time affects the market value of the property we think that so much of the charge would have been proper, but as it was drawn its meaning was too obscure to require its being given.

The second proposition in the requested charge was also faulty. The measure of damages is the difference in the market value of the property affected without the appropriation and the value of the same property after the appropriation. When a witness testifies to his opinion of the mar-

ket value of the property after the improvement it is entirely competent to elicit the grounds for that opinion and his answer is not rendered irrelevant because his judgment is predicated upon what others might deem to be unsound premises. If it develop that his judgment is based on speculations and fancies the jury will disregard that judgment. This instruction, however, was erroneous in directing the jury to entirely disregard the testimony of any witness who "considered any element of fear or danger to the person or property of the defendants", thus saying that as a matter of law the apprehensions of those who might consider the presence of highly charged electrical wires a menace to abutting property, and therefore capable of affecting the value of that property, were remote and speculative. With this we do not agree. **Sutherland on Damages, Section 1036, Hayes v. Trustees, 6 C. C. (n. s.) 281.** The instruction was properly refused.

While we find no error in the record that as a matter of law justifies the reversal of the judgment under a sufficient showing of facts we can not reconcile the verdict and judgment with the facts proven. The easement covers practically six acres. The probability is that the six acres covered by the easement has some value, but assuming that it has none the compensation can not exceed the value of the property taken. With the exception of the testimony of one of the owners, which for obvious reasons can not be taken into serious consideration, all of the evidence on behalf of the owners was that the property taken was worth from two hundred to two hundred and fifty dollars an acre. We are, of course, bound by the rule that the verdict of a jury can not be disturbed upon the weight of the evidence unless manifestly wrong, but we are also bound by the rule that when it is manifestly wrong it must be reversed. This record shows to a demonstration that the property covered by this easement is worth not more than twelve hundred to fifteen hundred dollars and that the verdict for thirty two hundred dollars is consquently manifestly wrong. It is not so clear that the amount of damages awarded for the loss suffered by the owners on the remainder of their lands is too large because that is not capable of mathematical demonstration. It seems to us that slight damages ought to have been allowed for so much of the land as lies south of the transmission line already running across the lower part of this farm. The verdict could not possibly have reached anywhere near the amounts returned by the jury except on the theory that this property was of a peculiar value for allotment purposes, and that this value would be destroyed by the construction of the transmission line. If the effect of the transmission line is to destroy the value for allotment purposes of all the land lying south of the transmission line then so much of it as lies south of the old transmission line has already been destroyed. Inasmuch as the record demonstrates that the verdict is wholly unreasonable as to the six acres we more readily reach the conclusion that the verdict as to damages, returned by the

same jury upon the same facts, must likewise be too high. We consequently reverse the judgment herein because it is manifestly contrary to the weight of the evidence and remand the case to the probate court for a new trial.

Middleton, PJ, and Blosser, J, concur.